IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAMIE E. BUCKHANON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART, Commissioner )<br>of Social Security, )<br>)<br>Defendant. ) | CIVIL ACTION NO. 2:04cv1070-SRW<br>(WO) |

**MEMORANDUM OF OPINION**

Jamie E. Buckhanon brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under the Social Security Act.  The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c).  Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be reversed.

**BACKGROUND**

On April 11, 2002, plaintiff was working at Construction Materials loading and unloading trucks (R. 64, 72).  He was lifting 80-pound concrete buckets onto a truck when he felt something "pop."  Over the next day, he felt increasing pain in his lower back and right shoulder.  (R. 110, 186).  An MRI on May 17, 2002 revealed evidence of an abrupt strain to the rotator cuff, a "[m]inor Schmorl's nodule affecting the inferior endplate of L5" and "minor annular bulge at L5-S1 without complication."  (R. 109).  His physician, Dr.

Patel, diagnosed lower back pain secondary to facet joint syndrome, and tendinitis and rotator cuff tear of the right shoulder. (R. 104). Dr. Patel referred plaintiff to Dr. Medha Pradhan, a pain management specialist. On June 4, 2002, Dr. Pradhan noted severe suprascapular muscle spasms, sacroiliac joint dysfunction, lumbar neuralgia with disc disease and lumbar radiculitis with muscle spasms. (R. 132). Dr. Pradhan treated plaintiff with sacroiliac joint injections, lumbar epidural steroid injections, and lumbar facet blocks over the next three weeks.

In July 2002, plaintiff sought treatment from Dr. James Whatley, an orthopedic surgeon. Dr. Whatley diagnosed plaintiff with "chronic right shoulder pain probably labral tear versus partial rotator cuff tear and low back strain." (R. 184). Dr. Whatley decided to treat the back conservatively, and to perform surgery on the shoulder. (Id.). On July 22, 2002, he performed "[a]rthroscopic evaluation of the shoulder with debridement of superior labral tear and arthroscopic subacromial decompression." (R. 179). Plaintiff began physical therapy on July 30, 2002. After some initial improvement, plaintiff complained of increased pain; on August 23, 2002, his physical therapist reported "winging of his scapula" which had gotten progressively worse. (R. 156). On September 11, 2002, plaintiff's physical therapist reported to Dr. Whatley that plaintiff continued to have pain, that he "continues to have excessive winging of his scapula and poor control of his scapular thoracic rhythm" and that he was making little progress with strengthening of his scapular stabilizing muscles. (R. 148). On September 13, 2002, Dr. Whatley evaluated plaintiff, noting "winging of the scapula" and "limited active motion." He indicated "[n]o work until re-evaluation."

In an evaluation on October 4, 2002, Dr. Whatley noted continued restriction of motion, "winging of his right scapula," and "more pronounced" weakness of the scapula. He referred plaintiff for an EMG and noted, "[k]eep him out of work and see him back after the EMG." (R. 182).  On November 1, 2002, Dr. Whatley noted that the "weakness and winging of his scapula seems to be getting progressively worse.  This has progressed significantly since our first evaluation of his shoulder in July.  The winging and the muscle spasm has gotten more significant.  We had an EMG done which shows a probable upper trunk lesion." (R. 180; see also R. 210 (EMG results)).  Dr. Whatley referred plaintiff to Dr. Robert Brown, a reconstructive surgeon, for further evaluation.

On November 8, 2002, plaintiff was discharged from physical therapy.  (R. 139).  On January 16, 2003, Dr. Brown noted that plaintiff had "marked deltoid atrophy and peculiar distortion of shoulder girdle" with abduction and flexion.  He indicated his belief that plaintiff's "deformity" was caused by a "frozen glenohumeral joint."  (R. 212).

On February 19, 2003, plaintiff filed the present application for disability insurance benefits.  On March 21, 2003, Dr. Whatley again examined plaintiff.  He stated:

> Cervical ROM is full. He has no neck pain.  He is tender along the medial scapular stabilizers.  There is still winging of the scapula. The Rhomboid is sore and the serratus anterior is still weak.  Shoulder motion itself is slightly restricted even with the scapula stabilized.  The back is tender.  ROM is moderately restricted.  Has pain and spasm on ROM.  X-rays are unremarkable.

(R. 181).  Dr. Whatley determined that plaintiff's back pain "represents a 5% partial permanent impairment based on chronic pain," and indicated that he would "determine the

3

shoulder impairment at a future date." (Id.).

After this examination, Dr. Whatley provided work restrictions to the case manager for plaintiff's workers' compensation claim.[1] On April 1, 2003, the case manager sent Dr. Whatley a description of a proposed light duty position – sweeping debris at plaintiff's employer's warehouse – and asked whether Dr. Whatley would release plaintiff to perform the job. She also informed Dr. Whatley that she had scheduled plaintiff for further physical therapy at Tallassee Rehab. (R. 217).

Plaintiff returned to Tallassee Rehab for treatment beginning on April 7, 2003. (R. 253). On April 21, 2003, plaintiff's physical therapist faxed a note to Dr. Whatley indicating that he had treated plaintiff for his right shoulder and lumbar dysfunction, and that plaintiff was "slightly improved with his shoulder stability and rotator cuff function." (R. 250). The next day, Dr. Whatley again evaluated plaintiff. Dr. Whatley determined that plaintiff's "persistent restriction of motion of his right shoulder with scapular winging . . . represents a 20% impairment to the right upper extremity and 12% impairment to the whole man." He stated, "[w]e are going to let him try the sweeping program which he suggested and see if he tolerates this." (R. 256). Dr. Whatley responded to the workers compensation case manager that it was "OK to try [the light duty sweeping position] + see how it is tolerated." (R. 217). He completed a "patient work capacity evaluation" form indicating that plaintiff could perform work at the light exertional level with restrictions, and allowing plaintiff to return

---

[1] The court has not located these work restrictions in the record.

4

to work the following day, April 23, 2003. (R. 216). On May 8, 2003, in response to additional questions from the workers' compensation carrier, Dr. Whatley indicated that plaintiff reached maximum medical improvement on March 21, 2003 as to his low back injury, and on April 22, 2003 as to his shoulder injury. (R. 215).

On May 7, 2004, after plaintiff's claim for disability benefits was denied at the initial administrative levels, an ALJ conducted an administrative hearing. The ALJ rendered a decision on August 5, 2004. The ALJ concluded that plaintiff suffered from the severe impairments of "Schmorl's nodule affecting the inferior endplate of L5 and minor annular bulge at L5-S1 without complication and is status-post arthroscopy of the right shoulder with debridement of superior labral tear and arthroscopic decompression. (R. 22). He found that plaintiff's impairments, considered in combination, did not meet or equal the severity of any of the impairments in the "listings" and, further, that plaintiff retained the residual functional capacity to perform jobs existing in significant numbers in the national economy. Thus, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act. On October 20, 2004, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v.

Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145.  Factual findings that are supported by substantial evidence must be upheld by the court.  The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  Davis, 985 F.2d at 531.  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed.  Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  It is the inability to engage in substantial gainful activity which must last for the requisite 12-month period.  See Barnhart v. Walton, 535 U.S. 212 (2002).

Plaintiff concedes that he is "not permanently and totally disabled." (Plaintiff's brief, p. 7).  However, he contends that he is entitled to a closed period of disability beginning on April 11, 2002, the date of his injury, and ending on April 23, 2003, the date Dr. Whatley released him to return to work. (Id.).  The Commissioner responds that "[i]t is clear, however, that Plaintiff was able to work as early as March 21, 2003, less than 12 months

from his alleged onset of disability."[2] The Commissioner suggests that Dr. Whatley's March 21, 2003 findings demonstrated that plaintiff was able to return to work, and the fact that Dr. Whatley did not respond to the workers' compensation case manager's questions until April 22, 2003 does not "negate his March 21, 2003 findings." (Defendant's brief, p. 6). The Commissioner argues that Dr. Whatley's April 22, 2003 progress note "suggests that Plaintiff's condition had not changed during the interval." (Id.).

The ALJ's conclusion that the plaintiff was not disabled is not supported by substantial evidence of record, for the following reasons:

(1) The ALJ expressly gave "controlling weight" to the April 22, 2003 assessment of Dr. Whatley, plaintiff's treating orthopedic surgeon, which reflected that plaintiff could perform a partial range of light work. The ALJ determined that plaintiff retains the residual functional capacity to perform work within the parameters specified in Dr. Whatley's assessment, while experiencing pain at a level of 6 on a scale of 10. (R. 18, 19, 21, 216).

(2) The ALJ's Step 5 finding – on which the Commissioner bears the burden of proof – is based on the ALJ's hypothetical question to the VE which assumed a residual functional capacity as set forth by Dr. Whatley, with the additional limitation of shoulder and lower back pain at a level of 6 on a scale of 10. (R. 271-72; 286-87; 21-22).

(3) Plaintiff received additional physical therapy between April 7, 2003 and April 22, 2003, showing slight improvement during that period as indicated in the note his physical

---

[2] The Commissioner does not argue that plaintiff was able to work at any time prior to March 21, 2003.

therapist faxed to Dr. Whatley on April 21, 2003.  (R. 250).

(4) Dr. Whatley rendered an opinion that, while plaintiff's lower back reached maximum medical improvement on March 21, 2003, his shoulder did not reach maximum medical improvement until April 22, 2003.  (R. 215).

Contrary to the Commissioner's argument, substantial evidence of record does not support the conclusion that plaintiff's condition remained unchanged between March 21, 2003 and April 22, 2003.  The limitations included in the ALJ's hypothetical question to the vocational expert were based on Dr. Whatley's assessment of plaintiff's condition on April 22, 2003, the day plaintiff reached maximum medical improvement as to both his back and shoulder injuries.  To the extent the ALJ relied on the VE's testimony to establish the existence of other work plaintiff could perform *prior to* April 11, 2003, the end of the 12-month period following plaintiff's injury, his decision is not supported by substantial evidence.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the Commissioner is due to be REVERSED and this action REMANDED to the Commissioner for further proceedings.  On remand, the Commissioner is directed to determine whether plaintiff retained the residual functional capacity to perform other work before April 11, 2003. A separate judgment will be entered.

Done, this 21st day of August, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE